1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK GLAZIER,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:13-cv-05426-RBL-KLS

REPORT AND RECOMMENDATION

Noted for May 23, 2014

Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits be

reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 19, 2010, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits. See Dkt. #13, Administrative Record ("AR") 17.  In December

2010, plaintiff was determined to be disabled as of November 13, 2010, based upon an initial

administrative review of his applications, but not before then because "[t]he evidence [that could

REPORT AND RECOMMENDATION - 1

be obtained] regarding [his] condition prior to this date was insufficient to determine disability." AR 29; see also AR 33, 402, 415.  Plaintiff requested reconsideration of the determination that he was not disabled before November 13, 2010. See AR 32. But in February 2011, and May 2011, his applications were denied on reconsideration, because while "[t]he medical evidence indicate[d he did] have some limitations," it did "not document . . . symptoms at a severity that would prevent [him] from performing all work activity," and therefore "no period of disability [wa]s established." AR 36, 417, 419.

Plaintiff requested a hearing, which was held before an administrative law judge ("ALJ") on March 30, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. See AR 449-87.  In a decision dated April 24, 2012, the ALJ determined plaintiff to be not disabled. See AR 17-27.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 25, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 5; 20 C.F.R. § 404.981, § 416.1481.

On June 12, 2013, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision to deny benefits. See ECF #3.  The administrative record was filed with the Court on August 26, 2013. See ECF #13.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the opinions of Richard Coder, Ph.D., Anita Peterson, Ph.D., Bruce Eather, Ph.D., and Nancy Armstrong, ARNP; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence from Jill Kruger; and (4) in failing to pose a proper hypothetical question to the

REPORT AND RECOMMENDATION - 2

vocational expert.  For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical opinion evidence, and in failing to pose a proper hypothetical question to the vocational expert, and thus in determining plaintiff to be not disabled.  The undersigned therefore recommends that defendant's decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

REPORT AND RECOMMENDATION - 3

1    sufficient to support either outcome, we must affirm the decision actually made.") (quoting

2    Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

3    I.    The ALJ's Evaluation of the Medical Opinion Evidence

4          The ALJ is responsible for determining credibility and resolving ambiguities and

5    conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

6    Where the medical evidence in the record is not conclusive, "questions of credibility and

7    resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

8    642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

9    Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

10   whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

11   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

12   within this responsibility." Id. at 603.

13         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

14   "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

15   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

16   stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

17   "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

18   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

---

[1] As the Ninth Circuit has further explained:

     . . . It is immaterial that the evidence in a case would permit a different conclusion than that
     which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
     substantial evidence, the courts are required to accept them.  It is the function of the
     [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
     not try the case de novo, neither may it abdicate its traditional function of review.  It must
     scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
     rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Coder

Dr. Coder conducted a psychological evaluation of plaintiff in mid-November 2011, based upon which he diagnosed plaintiff with an adjustment disorder and a "Cognitive Disorder

NOS – moderate sequelae due to closed head injuries," and gave him a global assessment of functioning ("GAF") score of 45.[2]  AR 181.  With respect to the cognitive disorder diagnosis and GAF score of 45, the ALJ stated:

> . . . Dr. Coder's diagnosis and GAF score are given little to no weight because of the sheer number [of] inconsistencies in this examination.  The GAF score is completely out of proportion with the claimant's stated abilities and with the mental status examination findings.  The diagnosis of cognitive disorder is based solely on information supplied by the claimant about "head injuries," none of which he had medical treatment for and none of which seemed to affect his ability to work up to 2010 and there is no evidence that he had treatment for or complaints of [the] same before or after the consultative examination.  Also, the claimant's performance on the mental status examination is inconsistent with having a moderate cognitive disorder.

AR 25.  Plaintiff argues, and the undersigned agrees, that the ALJ failed to provide valid reasons for rejecting both here.  First, the ALJ fails to state how the GAF score assigned by Dr. Coder is "completely out of proportion with" plaintiff's "stated abilities."  Id.

Second, it does not appear that Dr. Coder based his cognitive disorder diagnosis solely on plaintiff's own self-reporting.  See Morgan, 169 F.3d at 601 (9th Cir. 1999) (physician's opinion premised to large extent on claimant's own accounts of his or her symptoms and limitations may be disregarded where those complaints have been properly discounted).  Rather, he expressly opined that plaintiff's "perseveration and the brief mental status examination" – during which "signs of perseveration" were specifically noted – "show signs of the sequelae of traumatic brain injuries." AR 179, 181; see also Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

REPORT AND RECOMMENDATION - 6

supporting diagnosis of mental impairment is competent psychiatric evidence); <u>Clester v. Apfel</u>, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for psychiatric diagnosis, just physical examination results provide basis for diagnosis of physical illness or injury).  As the Ninth Circuit has stated:

> . . . [A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. . . .

<u>Ryan v. Commissioner of Social Sec.</u>, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); <u>see</u> <u>also</u> AR 181 ("Mr. Glazier appeared to respond to questions in an open and honest manner.").

The ALJ states plaintiff's performance on the mental status examination is not consistent with having a cognitive disorder, but also fails to explain the evidentiary basis for this statement. As such, she appears to have improperly acted as her own medical expert, particularly since Dr. Coder himself found the examination provided that basis. <u>See</u> <u>Gober v. Mathews</u>, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).[3]  Third, while it may be that the record fails to show much, if any, in the way of medical treatment plaintiff received for the alleged head injuries themselves, this alone does not prove those injuries did not or could not cause the "sequelae" Dr. Coder observed.  Fourth, and finally, the mere fact that plaintiff may have been able to work prior to the period of time during which he alleges he first became disabled, does not necessarily mean Dr. Coder's opinion that he has a cognitive disorder that at least at the time of the evaluation significantly impacts his ability to function is erroneous or unsupported by objective clinical findings.

---

[3] <u>See</u> <u>also</u> <u>Gonzalez Perez v. Secretary of Health and Human Services</u>, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); <u>McBrayer v. Secretary of Health and Human Services</u>, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); <u>Whitney v. Schweiker</u>, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony).

B.      Drs. Peterson and Eather

The record contains a mental residual functional capacity assessment ("MRFCA") form, completed in late November 2010, by Dr. Peterson, a non-examining psychologist, who assessed plaintiff with several moderate to marked mental functional limitations  based in large part on the evaluation performed by Dr. Coder.  See AR 183-85.  The record also contains an MRFCA form completed by Dr. Eather, a non-examining psychologist as well, in late January 2011, in which he too largely relied on Dr. Coder's evaluation report, but opined that the record supported at most only mild to moderate limitations in the same mental functional areas. See AR 347-50.[4] Plaintiff argues the ALJ erred in rejecting the findings and opinions of Drs. Peterson and Eather. Again, the undersigned agrees.

The ALJ gave the assessments of both non-examining psychologists "little to no weight because they were based completely on Dr. Coder's examination, which was afforded little to no weight." AR 26.  But even if Dr. Peterson and Dr. Brown did rely solely on Dr. Coder's own evaluation report and opinions and findings contained therein, as discussed above the ALJ's reasons for rejecting those opinions and findings were improper.  The ALJ also stated that "[t]he fact that there is essentially no medical evidence in the record to support mental impairments also weakens Dr. Peterson's and Dr. Eather's opinions" (id.), but again Dr. Coder's personal observations and mental status examination findings do constitute competent medical evidence of the existence of a cognitive disorder.  The ALJ further stated:

> . . . [I]t is noted that Dr. Eather found the claimant much more capable than
> Dr. Peterson, which is indicative of the problems with these opinions, since
> their assessments were based on the same examination; the variableness of Dr.

---

[4] Dr. Eather further opined that plaintiff could perform simple repetitive tasks, that his memory and pace were "adequate for a full work day with regular breaks," that he could interact with the public on an "infrequent basis," that he could "get along with authority and co[-]workers," and that he could "adapt to small changes in the work place and make simple work decisions on his own." AR 350.

REPORT AND RECOMMENDATION - 8

Coder's examination.

Id.  But it is far from clear as to what was variable about Dr. Coder's evaluation.  In addition, medical experts can – and, indeed, often do – differ, sometimes quite markedly, in their opinions as to what the objective clinical findings and other record evidence means or shows.  While it would be reasonable, furthermore, for an ALJ to find one or the other medical expert's opinions to be more supported by the record based on a proper evaluation of the evidence contained therein, it is not reasonable to reject all such opinions merely because of the existence of such conflicts given the ALJ's express duty to resolve them.

    C.    <u>Ms. Armstrong</u>

Also in regard to the medical opinion evidence, the ALJ found in relevant part:

> The record contains two physical evaluations that appear to have been performed about four months apart.  (Ex. 1F/1-6, duplicate at 5F/1-4).  In the first one, the claimant was found to have no work restrictions and his tinnitus was evaluated and rated to be only moderate.  In the second one [performed by Ms. Armstrong], the claimant was restricted to sedentary work due to marked tinnitus, chest pain-[chronic obstructive pulmonary disorder ("COPD")]-hypertension, knee pain, and back pain.  It is noted that the claimant did not mention having chest pain, COPD, or hypertension in his testimony nor did he attribute any limitations to these conditions.  In sum, these evaluations are given only some weight because the truth likely lies somewhere in the middle as these evaluations provide very different restrictions but were made during the same general period.

AR 24.  At least with respect to the work-related restrictions Ms. Anderson found to be caused by plaintiff's knee pain, back pain and hearing loss/tinnitus, the undersigned finds the ALJ erred for the same reason just discussed in regard to the opinions of Dr. Peterson and Dr. Eather.  That is, the ALJ appears to be rejecting both evaluations merely because they were conducted around the same time period and differ markedly in their conclusions.  Rather than conduct the type of rationale analysis of the conflicting evidence in the record in regard thereto, the ALJ seems to have merely arbitrarily split the difference, while failing to point to any specific evidence in the

REPORT AND RECOMMENDATION - 9

record to support her determination here, which was improper.

II.      The ALJ's Step Four Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . except [he] is able to occasionally climb ramps and stairs but no ladders, ropes, or scaffolds.  He is also able to occasionally crouch, crawl, and kneel as well as frequently balance and**

REPORT AND RECOMMENDATION - 10

**stoop.  He should avoid hazards and excess noise, fumes, odors, dusts, and gases.**

AR 20 (emphasis in original).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 479.  In response to that question, the vocational expert testified that plaintiff could perform his past relevant work as bartender, counter attendant and cashier II. See AR 479-80.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of returning to that past relevant work. See AR 26.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).

Plaintiff argues the ALJ's step four determination is not supported by substantial evidence, because the hypothetical question posed by the ALJ is incomplete.  The undersigned agrees that due to the ALJ's errors in evaluating the medical opinion evidence from Dr. Coder, Dr. Peterson, Dr. Eather, and Ms. Anderson, it is far from clear that the hypothetical question the ALJ posed completely and accurately describes all of plaintiff's mental and physical functional limitations, and therefore that the vocational expert's testimony upon which the ALJ relied is supported by substantial evidence.  Accordingly, it also is far from clear that plaintiff would be able to perform his past relevant work as found by the ALJ.

REPORT AND RECOMMENDATION - 11

III.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record concerning plaintiff's mental and physical impairments and limitations, and therefore in regard to his residual functional capacity and ability to perform his past relevant work, remand for further administrative consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as

REPORT AND RECOMMENDATION - 12

well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 23, 2014**, as noted in the caption.

DATED this 21st day of April, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13